**UNITED STATES of America,**

v.

**Jerrold Donnell BAUGH, Defendant.**

**No. 7:99–CR–10–WDO.**

United States District Court,
M.D. Georgia,
Valdosta Division.

Nov. 15, 1999.

**1376**

William Robert Folsom, Mr., Valdosta, GA, for Jerrold Donnell Baugh, defendant.

Joseph D. Weathers, Mr., Moultrie, GA, for Zonquil Antonio Bailey, defendant.

Donald Lamont Johstono, Albany, GA, for U.S.

## ORDER

OWENS, District Judge.

Before the court is defendant Baugh's Motion to Suppress evidence. The Court held a hearing on the motion in Macon, GA on October 18, 1999. Having carefully considered the matter, the court issues the following order.

### Facts

On March 4, 1999, at approximately 1:16 a.m., Lowndes County Deputy Darrell Tarver stopped Defendant Jerrold Donnell Baugh, who was driving a rental car, for repeatedly weaving off the right shoulder of the roadway. Tarver also found suspicious the fact that Baugh initiated his turn signal far in advance of the exit. Tarver stated that, in addition to the traffic violation, he stopped Baugh because he wanted to determine if Baugh's erratic driving was the result of intoxication or drowsiness. Co-Defendant Zonquil Antonio Bailey was a passenger in the front seat and a juvenile was a passenger in the back seat.

After the automobiles came to complete stops, Tarver instructed Baugh to exit the vehicle. A noticeable amount of time elapsed before Baugh exited the vehicle. Once the Defendant finally exited the vehicle, he walked to the back of the vehicle. Defendant informed Tarver that the vehicle had been rented. Defendant then provided Tarver with the rental agreement and further advised Tarver that the vehicle was rented by his cousin Diallo. When asked where Diallo was located, Baugh told Tarver that Diallo was traveling in another vehicle ahead of them. Baugh was not an authorized driver listed on the rental agreement. The Defendant went on to explain to Tarver that he had been to his grandmother's funeral on Sunday in Jacksonville, Florida. Tarver noticed that

the Defendant was very nervous and avoided eye contact with him.

When Tarver addressed the passenger, Co–Defendant Bailey, Bailey confirmed that the vehicle was rented by Diallo. However, Bailey told Tarver that Diallo remained in Atlanta, Georgia because he had to work; rather than joining them on the trip. Bailey also explained to Tarver that they had been to their grandmother's funeral. However, when Tarver inquired as to the day of the funeral, Bailey hesitated and then said it took place on Monday. Tarver also found Bailey's behavior suspicious. Tarver stated that Bailey always looked down before answering the questions to avoid eye contact with Tarver and otherwise appeared very nervous.

While Tarver was completing the warning citation to the Defendant, Tarver explained to the Defendant the problem they had with drugs and contraband and asked the Defendant if he was transporting drugs in his vehicle. Defendant responded, "no . . . you can check it." Tarver then stated, "you don't mind if we check it?" Baugh responded "no." Tarver provided the Defendant with a written consent form to search the vehicle, which the Defendant signed.

After obtaining the signed written consent form from the Defendant, Tarver had both passengers exit the vehicle while he conducted the search. During the search, Tarver recovered approximately 1174.9 grams of cocaine and approximately 103.4 grams of crack cocaine. Approximately 30.5 grams of marijuana was recovered by Deputy McEady. Both Defendants were arrested and transported to the law enforcement complex. The juvenile was turned over to his mother. The entire incident took place in approximately twelve minutes.

### Issue

Whether the initial stop and/or detention of defendant Baugh was unconstitutional.

### Discussion

Defendant argues that all evidence relating to said incident should be suppressed because the stop leading to the discovery of the evidence was unconstitutional and the detention of the defendant was unreasonable.

### Initial Stop

■ First, the defendant argues that the stop was not preceded by a valid traffic violation. Instead, the defendant argues that the stop was pretextual and designed to uncover illegal contraband.

The Supreme Court addressed, head on, the issue of pretextual stops in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). In *Whren,* the court held that an officer's subjective intent in stopping an individual (pretext) is irrelevant if the defendant violates a traffic law. *Id.* In this instance, the defendant did violate a traffic law, weaving pursuant to O.C.G.A. § 40–6–48(1), which provides: "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Defendant Baugh has not and does not now argue that he did not, in fact, weave, as alleged by Deputy Tarver. Therefore, under the circumstances, Deputy Tarver had probable cause to stop the defendant (1 for a violation of Georgia's traffic laws; namely weaving, a violation under O.C.G.A. § 40–6–48(1), and 2) to determine if Baugh was intoxicated. Accordingly, Deputy Tarver's initial stop was justified regardless of any other motivations that may or may not have been present. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

### Unlawful Detention

■ Baugh also argues that the evidence should be suppressed because he was unlawfully detained. Specifically, Baugh argues that he was detained beyond the time it reasonably takes to process a warning ticket for weaving and he was asked unlawful unrelated questions during this time which lead to the search of the automobile. This Court finds that the defendant was reasonably detained in order

to process the warning ticket and investigate the suspicious behavior of the occupants of the vehicle.

In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), the Supreme Court, following Terry, held that a police officer "can ... briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). "*Sharpe* teaches that in distinguishing a true investigative stop from a de facto arrest, we must not adhere to 'rigid time limitations' or 'bright line rules,' but must use 'common sense and ordinary human experience.'" *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir.1988) (*quoting Sharpe*, 470 U.S. at 685, 105 S.Ct. at 1575), *cert. denied*, 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989).

The Court finds that the defendant was not held for an unreasonable amount time. The entire incident lasted approximately twelve minutes. Baugh was reasonably interrogated in order to process the ticket and to determine whether Baugh was intoxicated. Specifically, the questions related to Baugh's destination and the rental agreement were non-intrusive questions reasonably tailored to determine if Baugh was intoxicated or otherwise involved in criminal activity. Based on Baugh's and Bailey's inconsistent answers to Tarver's questions, their nervous demeanors, and the fact that neither of them were authorized to drive the rental car, Tarver was justified in requesting consent to search the vehicle. Courts have repeatedly upheld similar detentions and requests to search. *See United States v.*

*Hardy*, 855 F.2d 753, 757 (11th Cir.1988), *United States v. Banshee*, 91 F.3d 99 (11th Cir.1996) (finding that inconsistent statements and a bulge in one of the defendant's midsections constituted probable cause to believe a search would uncover evidence of a crime), *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir.1991) (holding that the officer reasonably detained Harris and requested consent to search after giving him a warning ticket based on the following: 1) Harris was driving a rental car with a restricted license; 2) Harris was shaking and acting extremely nervous; and 3) Harris gave conflicting responses as to where he had been). Even one of the cases cited by the defendant in this case, held that having no authority to operate the vehicle and making inconsistent statements about destination justifies further questioning. *See U.S. v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999). Based on the reasoning found in these and other cases, Deputy Tarver was justified in requesting consent to search from Baugh.

Finally, it is undisputed that Baugh freely and voluntarily signed a written consent form entitling the police officers to an unrestricted search of his automobile. A search conducted pursuant to consent is a recognized exception to the requirements of probable cause and a search warrant. *United States v. Baldwin*, 644 F.2d 381, 383 (5th Cir.1981). Accordingly, the search of Baugh's automobile and discovery of the contraband was lawful.

### Conclusion

The Court finds that no violation of defendant's constitutional rights occurred on the day in question sufficient to suppress 1,174.9 grams of cocaine, 103.4 grams of crack cocaine, 30.5 grams of marijuana and other evidence seized as a result of the valid stop and detention of defendant. Accordingly, the search of Baugh's rental automobile and subsequent discovery of contraband was not unconstitutional and

evidence produced therefrom should not be suppressed. Defendant's Motion to Suppress the evidence [Tab # 22] is **HEREBY DENIED.**

**SO ORDERED.**